# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **VICKIE MCDONALD,** | ) |
| | ) |
|    **Claimant,** | ) |
| | ) |
| **vs.** | )   **Case No. 6:13-CV-1369-CLS** |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
|    **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Vickie McDonald, commenced this action on July 23, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by

substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that: (1) the ALJ's mental residual functional capacity findings are not based on substantial evidence; (2) the ALJ failed to comply with Social Security Ruling 02-1p in evaluating her obesity; (3) the ALJ failed to comply with Social Security Ruling 83-12 in discussing the exertional limitations of sitting and standing; and (4) the ALJ failed to properly develop the record because he did not obtain a medical source opinion. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

**A.     Mental Residual Functional Capacity Finding and Substantial Evidence**

The ALJ found that claimant had the severe mental impairments of borderline personality disorder and major depressive order.[1] In conducting the Psychiatric Review Technique to determine her eligibility under the Listings, the ALJ found that she had mild restriction of activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace.[2] Despite these problems, claimant retained the residual functional capacity to "understand, remember, and carry out to successful completion the simple instructions involved in unskilled work."[3]

---

[1] Tr. 17.
[2] Tr. 19.
[3] Tr. 20.

To the extent claimant suggests that the ALJ's findings are internally inconsistent, the court disagrees. Even with moderate difficulties in maintaining concentration, persistence, and pace, claimant should still be able perform the simple tasks involved in unskilled work.

Claimant also asserts that the ALJ's mental residual functional capacity finding failed to account for all her mental impairments. The court again disagrees, and finds that the ALJ's residual functional capacity finding was supported by substantial evidence. The ALJ relied heavily upon the opinion of Dr. Bonnie Atkinson, who conducted a consultative examination on March 3, 2010. Dr. Atkinson noted that claimant's dress, grooming, hygiene, and behavior were normal during the evaluation. Claimant was oriented as to person, place, time, and situation, and she could maintain focus sufficient to respond to interview questions. Claimant's general information, thought, and concentration were normal. Her reasoning and language comprehension were good, and her speech was clear. Claimant's immediate memory, delayed recall, recent memory, and remote memory all were normal. Dr. Atkinson opined that claimant's overall mental status was within the average range. Dr. Atkinson observed an intense affect, anxiety, and depressed mood. Hallucinations, ideas of reference, phobias, obsessions, and compulsions all were denied. Dr. Atkinson opined that claimant had sufficient judgment to make simple acceptable work decisions, and to

direct or manage her own funds. She assessed claimant with a history of cocaine dependence, nicotine dependence, and borderline personality disorder, and assigned a GAF score of 60, indicating moderate impairment. Dr. Atkinson's conclusory remarks were: "This individual is mentally ill. The claimant is not mentally retarded. It is my opinion that the claimant gave adequate information for this evaluation. It is unlikely that this claimant's condition will significantly change in the coming 12 months. These results are based only on psychological data."[4] The ALJ found Dr. Atkinson's assessment "persuasive as it is based on an examination of the claimant and is consistent with the medical record as a whole."[5] His limitation of claimant to unskilled work was in accordance with Dr. Atkinson's assessment.[6]

In contrast, the ALJ was less persuaded by the assessments of claimant's treating therapist, who assigned GAF scores of 42 on August 24, 2010,[7] and 45 on February 23, 2011,[8] indicating serious symptoms. After reviewing the therapist's treatment notes, the ALJ concluded that many of claimant's symptoms "seem to be precipitated by external stressors, such as family and financial problems."[9] Thus, the ALJ found the "relatively low" GAF scores assessed by the therapist to be "less

---

[4] Tr. 481-86.
[5] Tr. 23.
[6] *Id.*
[7] Tr. 667
[8] Tr. 663.
[9] Tr. 23.

persuasive as they are influenced by these external stressors."[10]  That conclusion was supported by substantial evidence of record.[11]  It also was in accordance with applicable law, as the ALJ is entitled to assign more weight to the opinion of a consultative examiner than a treating provider if he concludes that the consultative opinion is more supported by the record.  *See* 20 C.F.R. § 404.1527(d) (setting forth the factors the Commissioner should consider in assigning weight to *any* medical opinion).

**B.     Obesity and Social Security Ruling 02-1p**

Claimant also asserts that the ALJ failed to properly consider her obesity under Social Security Ruling 02-1p, which provides:

> Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.

---

[10] *Id.*

[11] *See* Tr. 686-705.

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.
>
> For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects and Caring for yourself).
>
> As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2000 WL 628049, at *6-7.

The ALJ found obesity to be one of claimant's severe impairments.[12] He also

---

[12] Tr. 17.

acknowledged that, in assessing claimant's residual functional capacity, "consideration must be given to any additional and cumulative effects of obesity."[13] He considered claimant's obesity in combination with her other impairments and concluded that it "reasonably limits her to work at the light exertional level with postural limitations, consistent with" his residual functional capacity finding.[14] That conclusion is supported by substantial evidence. The ALJ's failure to explicitly mention Social Security Ruling 02-1p is of no consequence, because the ALJ's analysis was *consistent with* that Ruling. Moreover, claimant did not make any substantive argument about what additional limitations the ALJ should have found as a result of her obesity.

**C.     Sit-Stand Option and Social Security Ruling 83-12**

The ALJ's residual functional capacity finding included a limitation that claimant could stand and walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but that she must be able to alternate sitting and standing at will.[15] Claimant asserts that the ALJ's finding lacks the specificity required by Social Security Ruling 83-12, which states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or

---

[13] Tr. 18.
[14] Tr. 23.
[15] Tr. 20.

> light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy — typically professional and managerial ones — in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, at 3 (alteration supplied).

Claimant also makes a passing, one-sentence argument that the ALJ's finding lacks the specificity required by Social Security Ruling 96-8p, which states, in pertinent part, as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe

the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p.

The ALJ's findings satisfy both of these Rulings. The ALJ *did* specify the amount of time claimant could perform the functions of sitting, standing, and walking: she is limited to six hours of sitting, and six hours of standing and walking, during an eight-hour workday. As an additional limitation, she must be able to alternate sitting and standing whenever she feels the need. There is no reasonable way for the ALJ to be more specific than that in his limitations.

Moreover, the ALJ used a vocational expert, as required by the SSR 83-12, to determine what impact the sit-stand option would have on claimant's ability to do work that exists in significant numbers in the national economy. The ALJ's hypothetical question to the vocational expert during the administrative hearing included the same limitations as the ALJ's residual functional capacity finding. Even with those limitations, *including the sit-stand option*, the vocational expert determined that there would be jobs available for claimant.[16]

### D.   Medical Source Statement and Failure to Develop the Record

Claimant next argues that the ALJ erred by assessing her *physical* residual

---

[16] Tr. 58-59.

functional capacity without the benefit of a medical source opinion from a treating source or medical expert, or an additional consultative examination. It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision*. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis supplied). Furthermore, claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)).[17]

The court concludes that the record in this case was sufficient, even absent any additional consultative report or medical source statement, for the ALJ to arrive at an informed decision. Accordingly, the ALJ's decision will not be disturbed on these

---

[17] Claimant acknowledges that "there is no express requirement for an MSO or RFC assessment to be of record in order for the ALJ to make RFC findings," but he nonetheless implies that it would have been a good idea for the ALJ to obtain such an assessment in this case. Doc. no. 10 (claimant's brief), at 12 ("[A]s a practical matter, to avoid substituting his or her judgment for that of a physician, an MSO of some kind is crucial to the analysis of functioning based on the medically determinable impairments (MDIs) determined." (alteration supplied).

grounds.

**E.     Conclusion and Order**

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 30th day of May, 2014.

_____
United States District Judge